UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF NEW YORK

```
                                    )
          JACOB FETMAN              )
                                    )
                                    )CASE NUMBER 15-43716
                                    )
                                    )
                                    )

                                    )
                                    )
                                    )
                                    )
                                    )
_____ )
```

-----------------------------------------------------------X

**TRANSCRIPT OF PROCEEDINGS**
**BEFORE THE HONORABLE NANCY HERSHEY LORD**
**February 2, 2016**
**271-C Cadman Plaza East**
**BROOKLYN, NEW YORK 11201-1800**

**APPEARANCES:**

**REPRESENTING AISH HATORAH NEW YORK, INC., CREDITOR**
**MARK A. FRANKEL, ESQ.**
Backenroth Frankel & Krinskuy LLP
800 Third Avenue
11 Floor
New York, New York 10022

**REPRESENTING MOSHE FETMAN, CREDITOR**
**JON A. LEFKOWITZ, ESQ.**
1222 Avenue M
Suite 204
Brooklyn, New York 11230

**AAA Write It Right Transcription**
**500 Silver Lane**
**Oceanside, New York 11572-1941**
**Tel: (516) 764 3906 Fax: (516) 203 4244**

**APPEARANCES CONTINUED:**

**REPRESENTING TRUSTEE**
**ROBERT MUSSO, ESQ.**
26 Court Street
Suite 2211
Brooklyn, New York 11242

**REPRESENTING TRUSTEE**
**BRUCE WEINER, ESQ.**
Rosenberg Musso & Weiner, LLP
26 Court Street
Suite 2211
Brooklyn, New York 11242

**REPRESENTING TAMAR FETMAN**
**ANDREW CITRON, ESQ.**
Law OfficeS of Andrew Citron
110 Wall Street
11 Floor
New York, New York 10005

**REPRESENTING Debtor**
**DAVID CARLEBACH, ESQ.**
The Carlebach GroupLC
55 Broadway
Suite 1902
New York, New York 10006

     Proceedings recorded by mechanical stenography,
transcript produced by computer.
--------------------------------------------------------X

1     Hearing re:

2                    [33[ Motion to Authorize/Direct bidding

3     procedures for the sale of Real Property Filed by Bruce

4     Weiner on behalf of Robert J. Musso.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**AAA Write It Right Transcription**
**500 Silver Lane**
**Oceanside, New York 11572-1941**
**Tel: (516) 764 3906 Fax: (516) 203 4244**

1      COURT CLERK:   Matter number 27 in the case of

2    Jacob Fetman.

3      MR. CARLEBACH:   Everybody else appears to be in

4    the hall.

5      THE COURT:   You might want to invite them in.

6      Appearances please.  Let's do the right side of the

7    room, and then left side of the room.

8      MR. CARLEBACH:   David Carlebach, representing the

9    Debtor Jacob Fetman.

10      MR. LEFKOWITZ:   Good afternoon, for Moshe Fetman,

11    and [Inaudible] Fetman, Jon Arie Lefkowitz.

12      MR. CITRON:   Good afternoon.  Andrew Citron, C-i-

13    t-r-o-n for Tamara Fetman.  She filed objections to the

14    motion.  Has also recently filed Adversary Proceeding.

15      MR. WEINER:   Bruce Weiner, Rosenberg Musso &

16    Weiner for Robert Musso, Trustee.

17      MR. MUSSO:   Robert Musso, Trustee.

18      MR. FRANKEL:   Mark Frankel, Backenroth Frankel &

19    Krinsky attorneys for Aish, New York.

20      THE COURT:   Okay.  I'm a little fuzzy about a few

21    things.  Mr. Citron?

22      MR. CITRON:   Yes.

23      THE COURT:   If it is Mrs. Fetman's -- Ms. Tamara -

24    - we'll use first names because we have a lot of Fetmans.

25    It's Tamara Fetman's position that she really is on the

1    title, and even though her name was crossed off, and we

2    don't know what those initials mean, or whatever.  But if

3    she in fact is on the title.  Let's pretend that wasn't

4    there.

5          And if it's the Debtor's position, and Tamara's

6    position that they hold mere legal title and not equitable

7    title, because equitable title belongs in her in-laws.  Why

8    are we going through the trouble of bringing an Adversary

9    Proceeding to stop a sale when she has conceded by her own

10   words no equitable right to the property.

11          MR. CITRON:   Uh --

12          THE COURT:   Explain that to me?

13          MR. CITRON:   That's not her position.

14          THE COURT:   I read the papers.

15          MR. CITRON:   I understand.  But her position is

16   the same as the Debtor.

17          THE COURT:   I know.

18          MR. CITRON:   Okay.

19          THE COURT:  And the Debtor's position is, at least

20   I though was, unless I haven't read Debtor's papers lately,

21   that -- I thought the Debtor's position was in agreement

22   with the parent's position.

23          MR. CITRON:   Again, she's one step removed because

24   she wasn't directly involved in whatever agreement --

25          THE COURT:   Answer my question.

1          MR. CITRON:    Okay.

2          THE COURT:    You just said it was the Debtor's

3    position.

4          MR. CITRON:    Okay.

5          THE COURT:    The Debtor's position is I thought in

6    alignment with the parent's position.

7          MR. CITRON:    Ms. Fetman's position, I think it's

8    similar to the Trustee's position is that the people in the

9    -- the starting point is the people in the deed are the

10   owners.  Their parents have alleged that there's a

11   constructive trust.

12         If they win, they're the owners.  If they lose Ms.

13   Fetman is the owner.  The real owner, the complete owner,

14   the owner in every --

15         THE COURT:    We are -- what we're not doing in this

16   court is game playing with me.  Okay?  We're not doing

17   that.  We don't have different [inaudible] to go to.  We

18   don't have different state courts to go to.  You're stuck

19   with me.  I'm going to hear it all.  I'm going to do it

20   all.  You are stuck with me.  Okay?  And I'm going to read

21   it all.

22         MR. CITRON:    If I may, Your Honor --

23         THE COURT:    And it's got to make sense to me.  You

24   have a legal problem with a constructive trust argument.

25   You need to study the law.

1          Either, I mean I get it.  I don't want to hurt

2   anybody here.  But either you're playing games, or you're

3   not doing your job as lawyers.  And you're not reading what

4   the law is.  I'm not sure which.

5          I don't, you know, I want to warn everybody about

6   perjury.  I want to warn everybody about a whole bunch of

7   things.  Bankruptcy crimes, IRS fraud.  I don't know.  I

8   mean be careful when you argue what you argue.  Because

9   it's all going to be here.  And I'm going to deal with it

10  all.

11          MR. CITRON:   I think --

12          THE COURT:   So, understand that.  And I think you

13  know that from other cases too.  It's here and it's

14  serious.

15          MR. CITRON:   Absolutely.

16          THE COURT:   And we're not going to play games.  So

17  in one breath to say to me that the -- for somebody to say

18  to me who is aligned with your client that no, we don't

19  really own it.  Okay?  And I have all these papers from

20  Moshe Fetman and his wife, we are the owners.  Somebody

21  should tell them that in the United States of America, to

22  be an owner of real property means to be an owner of real

23  property.  You need to be the owner.  It's [inaudible].

24  It's about fee title.  Okay?

25          And if it's not about fee title, it's hard.  It's

1   hard to prove.  Okay?  And it's a real hard thing to prove

2   in the Second Circuit, and in the Eastern District.  And I

3   will talk about the law that applies.

4          So, but to basically -- what really is happening

5   here, I think, is you're going to use every single argument

6   instead of facts.  And anything else inconsistent or not.

7   Throw inconsistency to the wind, in order to block

8   liquidation of properties for the benefit of creditors,

9   whoever they may be.  And maybe it's going to be Aish for

10  twenty million dollars, or it's going to be Aish for a

11  smaller amount of money.  Or whoever the creditor body is.

12         But we're not going to play games.  Are we clear

13  about that, everybody?  Everybody?  Okay.

14         So again, your Adversary Proceeding is not on

15  today.  But to again in one breath tell me that you don't

16  have legal title.  And the next -- you don't have equitable

17  title.  You have merely legal title, and maybe your client

18  doesn't even have mere legal title.  Okay?  So we have to

19  go, we have to spend a lot of money.

20         Other thing you all should be aware of, is that the

21  more money that's being spent here, the higher their

22  expenses of administration are.  And the less money there

23  will be for anybody at the the end of the day.  So if there

24  are guarantors or other liabilities, or other things out

25  there, this is not constructive because again, they have an

1   obligation to do what they're doing.

2        So to say in one breath that you have -- that you

3   have mere legal title, and that equitable ownership belongs

4   elsewhere, and that's why the Trustee shouldn't do it.  And

5   then the next breath to say, oh no, but if in fact we don't

6   have equitable title, we have it all, then the Trustee

7   can't sell.  Or the Trustee could sell under circumstances

8   in any event in those situations.

9        So okay.  You can sit down.

10       With respect to the constructive trust argument I

11  want everybody to go do some homework.  Maybe some of you

12  have read the decision.  My -- and she is my very learned

13  colleague Chief Judge Craig -- wrote a decision about

14  constructive trust arguments.  Had to do with a vehicle,

15  personal property but it's almost an *a fortiori* situation

16  to real property.

17       And that's the case called *in re NFM Balgobin,* B-a-

18  l-g-o-b-i-n.  It was actually Delser [ph.], as Trustee for

19  the estate of Balgobin against Mark Balgobin.  This was a

20  fairly simple situation that comes up a lot.  This kind of

21  idea of the Debtor has just legal title and really somebody

22  else has the rights and ownership and whatever ownership

23  means to it.

24       It comes up a lot.  People do you know, Medicaid

25  transfers.  They do all kinds of things.  And they transfer

1   things, parents transfer things to children.  And in this

2   case somebody, a kid, doesn't have the credit to buy a car

3   so the parent Debtor buys the car.  You know, it's -- this

4   was a about a car.  This was about a father, son car.

5          But the law in it is quite clear.  And it's based

6   upon Second Circuit law.

7          And a case called *Superintendent of Insurance*

8   *versus -- Superintendent of Insurance for New York against*

9   *Oakes.  In re 1st --*  I think that must be Century

10  Financial Corporation, or some kind of Financial

11  Corporation, 377 F 3rd 209 2nd Circuit 2004 involving

12  trust, or trusts.

13         The short, and the long of it is, is that Judge

14  Craig found that there are four elements.  And the last one

15  being unjust enrichment or fraud has to be there.  And

16  basically if you -- if folks are trying to create a

17  constructive trust for intent enforcing purposes, which is

18  all I read so far in these papers, that we need a

19  constructive trust here for the property to go back to the

20  parents because that was the intent.  Intent enforcing use

21  of that vehicle, the constructive trust.  It has to be

22  fraud rectifying, not intent enforcing, okay.

23         And the fraud rectifying has got to be directed at

24  the Debtor.  But you need to read these.  Hopefully you all

25  took the cite down.  You need to read this.  And then I'll

1    allow you to file a brief to tell me why it is, that this

2    law again, it's Judge Craig in this district.  It was in

3    Shepardizing it, it's been followed once in the western

4    district of New York, a District Court in a bankruptcy.

5         But again, based upon the 2nd Circuit Law having to

6    do with how you can -- assuming you have all the four

7    elements.  But there's four elements, and the fourth one

8    has to do with unjust enrichment, and the unjust enrichment

9    has to do with it being again, you have to -- it has to be

10   fraud rectifying.  Not just okay, I took title to my son's

11   car.  It was always our intent that I be his car.  He's

12   paying the payments on it.  He's driving it.  You know, it

13   has nothing to do with me.

14        Again, we see that all the time.  We see it with

15   real estate.  We see it with cars.  It's just a bad, you

16   know, it's a bad idea.  But then if you try to undo it with

17   arguments that are not always consistent in these cases,

18   you've got a problem.  All you're trying to do is get to

19   what the intent was, as opposed to rectifying fraud.

20        So you've got the cites?

21        MR. WEINER:  I don't think you gave us the Judge --

22        THE COURT:  The cite for the 2nd Circuit?

23        MR. WEINER:  No, the cite for the 2nd Circuit you

24   did.  But not Judge Craig's.

25        THE COURT:  Oh, Judge Craig's case I'm sorry, is

1    490 BR13.  It's a March 22, 2013.

2           And just to give you a flavor, I'm just reading

3    from the middle.  In considering whether to impose a

4    constructive trust in a bankruptcy case the 2nd Circuit is

5    cautioned that while bankruptcy law does not trump state

6    constructed trust law, Bankruptcy Court should act very

7    cautiously in deciding whether to oppose a constructive

8    trust on property that otherwise would be property of the

9    estate.

10          And then it cites that *Superintendent of Insurance*

11   *versus Ochs* case.  It also cites Ades and Berg Group

12   Investors.

13          As the 2nd Circuit explained, the chief purposes of

14   the bankruptcy laws are to secure a prompt and effectual

15   administration and settlement of the estate of all

16   bankrupts within a limited period, to place the property of

17   the bankrupt, wherever found, under the control of the

18   court, for equal distribution among the creditors, and to

19   protect the creditors from one another. But by creating a

20   separate allocation mechanism outside the scope of the

21   bankruptcy system, the constructive trust doctrine can

22   wreak havoc with the priority system ordained by the

23   Bankruptcy Code.  There's ellipses.  We believe it

24   important to carefully note the difference between

25   constructive trust claims arising in bankruptcy as opposed

1   to those that do not, as the equities of bankruptcy are not

2   the equities of the common law.

3       And then further along there's a lot of, cites a

4   lot of law in this decision.  So I guess we're going to be

5   looking at whether or not there was an expressed trust.

6   Was there an agreement?  Are you able to produce an

7   agreement?

8       It says -- a writing that says that this property

9   was held in the expressed trust for the parents.  So

10  expressed trust.  I'm assuming you don't have that since

11  you've been arguing constructive trust in the papers.

12      The Bankruptcy Courts are generally reluctant to

13  impose constructive trust without a substantial reason to

14  do so where a party seeks to impose a constructive trust

15  against the bankruptcy estate at the expense of creditors

16  of the estate.

17      And then he quotes another 2nd Circuit decision --

18  she does -- *Cadle Company v. Mangan (In re Flanagan)* The

19  effect of a constructive trust in bankruptcy is profound.

20  While the bankrupt estate is defined very broadly under §

21  541(a)(1) of the Bankruptcy Code to include all legal or

22  equitable interests of the debtor, any property that the

23  debtor holds in constructive trust for another is excluded

24  from the estate pursuant to § 541(d).

25      And then she cites *Brenner v. Heller* a Northern

1     District decision.  Finding that constructive trust claim

2     against the estate was not warranted under the facts before

3     it, stating that " in this case, where there are numerous

4     other unsecured creditors equity does not support the

5     creation of constructive trust"

6          But then let me get to the part about fraud

7     inducing.  And the other -- oh, the other part about this

8     decision has to do with when that constructive trust arose.

9     Did it arise pre-petition.

10         Although the elements of constructive trust are

11     regarded as guideposts, unjust enrichment is the most

12     important since the purpose of the constructive trust is

13     prevention of unjust enrichment.  Unjust enrichment is

14     present, and thus a constructive trust may be warranted

15     only where such relief is "necessary to satisfy the demands

16     of justice", meaning that a party holds property under such

17     circumstances that an equity in good conscience he ought

18     not -- he ought not to retain it.

19         Here I feel like he only ought not to retain it as

20     long as there's a creditor chasing him for it, okay, as

21     opposed to he ought not to retain it.

22         Quote, while a showing of actual fraud, or wrongful

23     conduct is not strictly required for constructive trust,

24     New York law is clear that a constructive trust is an

25     equitable remedy intended to be fraud rectifying rather

1    than intent enforcing.

2         And then they noted several instances that this

3    First Central Case where New York State Courts declined to

4    grant a constructive trust claims that were brought to

5    effectuate the intent of the party, absent any misconduct

6    by the party against whom the constructive trust is sought

7    to be imposed.

8         And then later on, applying these principals to her

9    case the Defendant's allegations do not support the

10   imposition of a constructive trust.  The Defendant does not

11   claim that the Debtor attempted to repudiate their alleged

12   agreement, and does not allege any misconduct overreaching

13   or inequitable behavior by the Debtor.  To the contrary,

14   the Debtor and his attorney have brought affidavits in

15   support of the Defendant's claimed interest in the vehicle.

16   And the Debtor's attorney states the Debtor washes his

17   hands from any claim of ownership of a vehicle.

18        The factual circumstances in this case provide a

19   clear example of an attempt by the parties to an alleged

20   oral agreement to utilize a constructive trust as an intent

21   enforcing rather than a fraud rectifying remedy.  Because

22   no enforceable expressed trust exists here, the parties are

23   seeking to invoke the remedy of a constructive trust to

24   enforce a non-enforceable agreement.  This is precisely the

25   intent in forcing use of constructive trust that is

1  prohibitive under New York law.

2       So, if you think you can get around that in the 2nd

3  Circuit Law, I'll take your brief.

4       Okay, now that I've said all that, you filed a

5  motion for bidding proceedings that's contested.

6       MR. WEINER:   Yes, Your Honor.

7       THE COURT:   So, it had -- what I don't -- you see

8  what I don't think is that I can do a contested matter

9  scheduling order, but again this was done under a motion

10  for summary judgment.  I don't think that there are any

11  issues of other than the intent issue.  There aren't any

12  issues of fact that I can see with respect to whether this

13  is, you know -- in other words the question is whether or

14  not you can impose a constructive trust even on your best

15  stated facts you may not be able to here because of the law

16  and not the facts.  Unless you have an expressed trust, or

17  unless you're going to -- someone is going to change their

18  position again and say that the Debtor son is guilty of

19  fraud here, which I haven't heard, so.  At least from this

20  side of the table.

21       What say you?

22       MR. WEINER:   Well, I agree that we need to get

23  these issues resolved before we can move forward with the

24  sale of the property.  The constructive trust issue has to

25  be disposed of.  We don't think that you show a

1    constructive trust for all the reasons stated by Judge

2    Craig in those decisions.  I think it's clear already that

3    there's no constructive trust in their own arguments in

4    their papers, you know, contradicted the Debtor's affidavit

5    in support of the confession of judgment saying the parents

6    loaned him the money to buy the properties.  And notice it

7    says him, rather than us.  The parents motion affidavit

8    starts off by saying I am a creditor in this proceeding.

9    The fact that the involuntary was filed by him based on the

10   Debtor's affidavit of confession, and he put the Debtor

11   into bankruptcy to stop the --

12            THE COURT:   No, the [inaudible] respond response

13   in order to stop H, okay.

14            MR. WEINER:   Right.

15            THE COURT:   I'm not -- I mean that to me is in

16   some way less problematic than the rest of this.

17            MR. WEINER:   Right.

18            THE COURT:   In the sense that very often a, you

19   know, another creditor or somebody has an interest will

20   file a petition to stop a sale of some kind or a judgement.

21   I mean, I understand that.

22            MR. WEINER:   I understand, but I --

23            THE COURT:   Now that we have a petition, and we

24   have an order for relief you're entitled to liquidate and

25   you're getting pushed back.  But I'm trying to see again, I

1  haven't -- I don't see -- trying to see what the argument

2  is under the law here to -- where, how you do a pushback is

3  going to be successful.

4      MR. WEINER:   I'm not arguing that the -- if

5  anything necessarily with the involuntary itself.  But I'm

6  just saying the fact that as of using his rights as a

7  creditor, based on the loan of according to the Debtor in

8  the affidavit attached to the judgment, that the very debt

9  was loaned to the Debtor by his parents in order to

10 purchase these properties, you know, contradicts --

11     THE COURT:   It's not consistent with them being --

12     MR. WEINER:   It's not consistent -- it's not

13 consistent.  And the -- and as well as the statement in

14 Moshe Fetman's affidavit that he couldn't buy this property

15 in his own name because he wasn't a citizen when he had

16 just in two or three years before that bought the two

17 properties -- contiguous properties to, you know, to that

18 one.  It's again completely contradicts that if he could --

19 if he was able to buy those properties, he could have

20 bought this property.

21     So none of this, you know, holds together with any

22 kind of consistency.  If the court wants briefing on the

23 constructive trust then we will do it.

24     THE COURT:   Well, you know, I'm --

25     MR. WEINER:   We submit that there's enough here to

1  overrule the constructive trust.

2          THE COURT:    Again, I sit here puzzled, okay.    I

3  read the papers.    There wasn't a lot of law in them.    And I

4  guess what I'm really saying to the side that's raising the

5  constructive trust show me how that possibly flies in New

6  York or in the 2nd Circuit, or in this court.    And you can

7  show it to me in a brief if you so choose.

8          MR. LEFKOWITZ:    Good afternoon, Your Honor.    You

9  should also consider please two other things.    Number 1,

10  that there was already an action filed in the New York

11  State Supreme Court Kings County alleging the same

12  constructive trust essentially.    And it wasn't by me.    But

13  there is a pending action seeking the same relief.

14          THE COURT:    Is that the one that was filed after

15  the petition, or before?

16          MR. LEFKOWITZ:    It was filed before.    And what

17  happened was Judge Demarest [ph.], across the street

18  directed the Petitioner to file a bond if they wanted to

19  have a say.    They couldn't come up with the money for the

20  bond therefore no say.    The case still exists.    However

21  shortly thereafter that involuntary petition was filed here

22  invoking a bankruptcy stay, and therefore nothing happened

23  with state court case, but it's still pending.

24          THE COURT:    Again, the law says I don't know that

25  you could prove it under state law.    But the law says that

1   in bankruptcy it's harder to prove.

2         MR. LEFKOWITZ:   Yes, and Your Honor, you also

3   quoted as part of the decision that one thing that does not

4   pertain in this court, is that it does not trump state law.

5   And precisely for the reason that you just said that it's

6   harder to prove in this court.  We should be able to go

7   ahead in the state court --

8         THE COURT:   Not in a million years.

9         MR. LEFKOWITZ:   [Inaudible].

10        THE COURT:  Denied.

11        MR. LEFKOWITZ:  It's already [inaudible].

12        THE COURT:  Don't even try.

13        MR. LEFKOWITZ:  Okay.  Moving on.  As I said, I'm

14   just bringing to your attention that it's been filed.  And

15   it was done before.

16        And moving on to the issues of Trustee's motion.

17   We Mr. Fetman Senior, Moshe Fetman and Yaffa  Fetman are

18   entitled to due process.  They need to file an Adversary

19   Proceeding.  There should be discovery and a trial.  And

20   there are factual issues here.

21        THE COURT:  No, no, no.  They don't have -- first

22   of all they filed a motion -- they filed a motion for

23   bidding procedures, okay.  That's all they've done.  And

24   you objected to it.  And you have what we call a contested

25   matter scheduling order.

1      I don't know, and I'm not sure, again, they don't

2  have to file Adversary Proceeding to do anything in the

3  sense that we have -- they would have to file a proceeding,

4  and sometimes it's done by motion.  And sometimes by

5  Adversary Proceeding, if they wanted to sell the Debtor,

6  and the non Debtor share of the property, okay?

7      And then there's a test for that.  But sometimes

8  they can bring an Adversary Proceeding and sometimes they

9  can do a motion.  What they're trying to do is sell.  So

10 now we have an Adversary Proceeding because the deed that

11 they have only has the Debtor's name on it.

12     MR. LEFKOWITZ:  Your Honor, the --

13     THE COURT:   The deed that they -- or do they have

14 a different deed than the one that was attached to papers?

15     MR. LEFKOWITZ:   No, Your Honor, but you're

16 overlooking the second name Fetman.  True, it does not have

17 a first name, but it says Jacob Fetman, and Fetman.  Now,

18 it's either Tammy Fetman or Tamar Fetman, or maybe a

19 different Fetman.  But it is not true that it has only one

20 nam e on it.

21     THE COURT:  Okay, but the same people, unless it's

22 some mysterious Fetman that's going to come in here and

23 argue something else, the same people who would be on that

24 assuming, yes, she was supposed to be on that.  And again,

25 we don't understand if the crossing out was the crossing

1    out, or the un-crossing out.  I mean I read the papers.

2    Tamar, Tammy, they crossed out.  They un-crossed out.  I

3    don't know.  Maybe there's an entirely different reason for

4    it.

5         Bottom line is, that even if it's both of them,

6    they've taken the position that they really don't have the

7    right to it.  The right really belongs with the parents.  I

8    don't say own.

9         I mean, Mr. Lefkowitz, how can you give me papers

10   that say over, and over again that your clients own these

11   properties.  You're a lawyer in the State of New York.  Did

12   you ever look over the Statue of Frauds, and what reports

13   required for a transfer of property.  You need a deed.

14        MR. LEFKOWITZ:   It's what we call -- what you

15   refer to as the beneficial interest.

16        THE COURT:  But that's different than saying

17   ownership.  Okay?  At least put in a footnote.  Just to say

18   my client owns these properties?  Let's be careful of

19   saying things that are a little disingenuous.

20        They don't own anything.  Maybe they have an

21   equitable claim.  But to say they own, they own, they own.

22   Ownership required them to be on a deed.

23        MR. LEFKOWITZ:   Your Honor, if you look at my

24   papers you will see for example in paragraph 13 --

25        THE COURT:   I did look.  Didn't it begin by saying

1       --

2               MR. LEFKOWITZ:    Yes.

3               THE COURT:    -- my clients own --

4               MR. LEFKOWITZ:    Yes, but in paragraph 13 I do say

5       actual beneficial owners.  And our claim to the actual

6       beneficial owners is well documented.  It is the claim of

7       beneficial ownership interest.  And --

8               THE COURT:    All right, 541(d) is what you're

9       asserting, 541(d) in the Bankruptcy Code.  I'm hoping you

10      don't have to write that down.  You should know that.

11              MR. LEFKOWITZ:    Your Honor --

12              THE COURT:    That's what you're asserting.

13              MR. LEFKOWITZ:    Okay.

14              THE COURT:    Okay?  If you're not in bankruptcy

15      practitioner, your name may be -- I don't know if you are,

16      or you're not, but you're not a bankruptcy practitioner you

17      may be doing your clients a disservice.

18              541(d) says that --- 541(a) talks about property of

19      the estate.  And it is huge, it is global.  It's all legal

20      and equitable interests in the world.  And then the rest of

21      are exceptions.

22              And there is an exception.  It's a limited

23      exception.  There is an exception that says if mere legal

24      title, but equitable -- is in the Debtor -- but the total

25      equitable beneficial interest -- naturally they use

1    mortgages as an example -- is not with the Debtor, then

2    there is a -- then it's not property of the estate.

3          So you argue 541.  He makes the motion and you are

4    objecting to his ability to sell because you say this is

5    not property.  At least this is what you should be saying.

6    This is not property of the estate of 541(d).  Okay.  And

7    it seems to me it's your burden then to bring a Adversary

8    Proceeding for declaratory relief that the property is not

9    property of the estate under 541(d).

10          I don't want to, but I'm happy, I'm perfectly happy

11    to call this a motion, a contested motion, so you don't all

12    have to bring lawsuits.  Because I would consolidate them

13    anyway.  I can do this as a contested matter, a contested

14    matter scheduling order.  And it can go along the same way

15    as the Tammy Fetman Adversary.  But I will -- I will allow

16    for the [inaudible] of a summary judgment motion on the

17    issue of constructive trust.

18          So I'm going to give you an opportunity to file law

19    on why this law -- I mean, if you follow this law you're

20    dead on arrival.  And you're going to explain to me why I

21    shouldn't follow this law.  Or show me the expressed trust.

22    Or show me something.

23          Again, bearing in mind that there are inconsistent

24    positions here on the issue of whether or not, you know, he

25    -- he shouldn't sell it because she's on it.  But even

1  though she's on it, she and the Debtor  say it's not really

2  theirs.   It's yours.

3         So again, when I say games, you know that show

4  thing on the street, we're not going to do that here.

5  Okay.  We're not.  So we're going to figure out what the

6  law is.  And we're going to apply the law to the facts in

7  this case.

8         When you say there are issues of fact, there are

9  only issues of fact once you get past the question of

10 whether or not you can impose a constructive trust as a

11 matter of law.  If all that you're trying to do here is not

12 rectify fraud, but only -- what was the phrase intent --

13 whatever I said -- to basically do what the intent of the

14 parties was, you can't do that.

15        If you don't have unjust enrichment by the Debtor

16 you can't do that.  Or fraud by the Debtor you can't do

17 that.  So I don't have to get to the facts because as a

18 matter of law what -- on your best argument, you don't make

19 it.

20        If the facts, if that were not the case, then we

21 could go down to the facts.  But take a look at the

22 positions you're arguing.

23        Didn't you also raise an issue about income taxes?

24        MR. WEINER:   Yes, Your Honor.  That the Debtor has

25 used the deductions for the property on his income tax

1    returns and had the benefits of ownership for the property.

2            THE COURT:   And all of this could be consistent

3    with a loan, or a gift.  And again I saw the attachments

4    where Moshe Fetman is paying for this, or paying for that,

5    or paying for this.

6            Again, you know, in a supportive family environment

7    that goes on.  So I'll give you -- what I'm going to do --

8    when is the -- when is the pretrial?  Probably not for a

9    while.

10           MR. LEFKOWITZ:   Thursday.

11           THE COURT:   No, that's on the --

12           MR. WEINER:   That's a different --

13           THE COURT:   That's a different Adversary, a

14   totally different thing.

15           MR. WEINER:   That's to avoid their lien.  I did

16   that because the 363(f) we had to show that their lien on

17   the property was contested in order to be able to invoke --

18           THE COURT:   That's a lien.

19           MR. WEINER:   Yes.  That's all they -- the --

20           THE COURT:   So wait a minute.

21           MR. WEINER:   The outcome -- the pretrial --

22           THE COURT:   It's the Fetman-- parents have a

23   lien?

24           MR. WEINER:   The Fetman parents have a judgment

25   which became -- which was recorded --

1          THE COURT:   The affidavit -- the confession of

2    judgment became a lien on the property?

3          MR. WEINER:   They have a lien on the property.

4          THE COURT:   Right.

5          MR. WEINER:   So in order to be able to sell the

6    property free and clear of liens, I have to either have the

7    lienholder's consent, which I do in the Aish -- for the

8    Aish liens.  But I don't for the Moshe Fetman liens, so I

9    have to show that there is a --

10          THE COURT:   Okay, but that's not a, I mean,

11    putting the confession as you said earlier I guess, putting

12    the confession of judgment on the property is not

13    particularly consistent with.

14          MR. WEINER:   That may be.  But I have to show that

15    there's a legitimate dispute as to whether they have a lien

16    in order to be able to invoke 363(f).  So that's the

17    reason.

18          THE COURT:   No, but now you have a 363(f) issue

19    with the wife.

20          MR. WEINER:   That just came up when they filed

21    their papers --

22          THE COURT:   Right.

23          MR. WEINER:   -- just a few days ago.

24          THE COURT:   So?

25          MR. WEINER:   Yes, of course again those papers as

1    well didn't have any laws --

2              THE COURT:    Right.

3              MR. WEINER:    -- to the effect that that type of

4    deed under New York Law.  But we do have that -- we do have

5    that issue.

6              I will say that in the event that Tamar Fetman

7    prevails, and shows that she is a 50% owner of the

8    property, then the Trustee can use both 363(h), and New

9    York Partition Law to sell the property.  In any event it

10   would just -- that would just mean that she would have to

11   get some of the net proceeds.

12             THE COURT:    Right, assuming she was determined to

13   be entitled to that.

14             MR. WEINER:    Right.  Assuming that she was --

15             THE COURT:    And then again, nobody is -- this is

16   not a situation where anybody lives in these properties,

17   right?

18             MR. WEINER:    No.  No.

19             THE COURT:    All right.

20             MR. WEINER:    This is -- these are --

21             THE COURT:    So the one issue I did read about is

22   that the property in between is owned by the Fetmans of the

23   --

24             MR. WEINER:    The parents.

25             THE COURT:    Moshe Fetman?

1          MR. WEINER:   Yes.

2          THE COURT:   Okay.

3          MR. WEINER:   And has been for some time prior to -

4   -

5          THE COURT:   What's, what's --

6          MR. WEINER:   -- certainly prior to -- all prior to

7   Jacob [inaudible].

8          THE COURT:   What in 301, and what's in 305?   Or

9   whatever it is; 501, what's the addresses?

10          MR. WEINER:   4301 --

11          THE COURT:   Oh, 301.   4301 --

12          MR. WEINER:   4301, and 4305.   And the one in

13   between is 4303.

14          THE COURT:   Right.   What's in 4301 -- 05?   4301

15   give me all of it.

16          MR. WEINER:   They use, I think some commercial use

17   to the property.   I think there may be a synagogue in one

18   of them.   And there's maybe also some residential tenants.

19          THE COURT:   And they have leases?

20          MR. WEINER:   I don't know whether there are any

21   leases.

22          MR. LEFKOWITZ:   Your Honor, yes there are leases.

23   Yes, they are all rented.   Yes, one of them has a

24   commercial property on the ground floor.   And in fact one

25   of the leases in the name of Moshe Fetman is an exhibit to

1    my papers.  And it's just one of those things that show

2    that it's Moshe Fetman whose property it is, and not Jacob.

3            THE COURT:    Moshe Fetman is listed as the

4    landlord?

5            MR. LEFKOWITZ:    As the lessor.

6            THE COURT:    As the lessor, in 4301 or 4305?

7            MR. LEFKOWITZ:  Y es.  If you want to know exactly

8    which one I'll find out in a few seconds.  4301.

9            THE COURT:    All right, so you would be selling --

10   you'd have to be -- you've done -- you've looked at those -

11   - have you looked at the leases to determine whether you

12   have to, you would be selling subject to the leases?

13           MR. WEINER:    We haven't gotten so far as to

14   determine.  But if it's legitimate leases we probably would

15   be selling subject to them.  We're not looking to put

16   tenants, necessarily put tenants on -- we haven't, you

17   know, gotten that far yet.

18           But since this was just -- the existence of these

19   leases, and I don't even know whether we have all the

20   leases for the two properties.

21           THE COURT:    Okay, so the question is whether or

22   not I keep the contested matter scheduling order, or I do

23   have you file the adversary for -- file the adversary under

24   363.

25           MR. WEINER:    I could, you mean to sell the

1    estate's interest, and perhaps the interest of Tamar?

2              THE COURT:    Right.

3              MR. WEINER:    I could do that.  We could

4    consolidate everything.

5              THE COURT:    And then we could consolidate

6    everything.  We could do -- or I again, I -- it doesn't

7    matter.  It's -- he'll get the Adversary Proceeding at the

8    end of the day and we'll consolidate them.  It doesn't

9    matter.  It's just a question of -- and then it would be

10   more easy for you if you wanted a TF or summary judgment

11   motion, as opposed to -- a summary judgment motion with a

12   contested matter is kind of, you know, a little weird.

13             MR. LEFKOWITZ:    Excuse me, Your Honor.  My

14   position is that that is appropriate because under Rule

15   7001 anytime we have a contest over the ownership of the

16   property --

17             THE COURT:    Right.  I was just questioning whether

18   it's his adversary to bring or yours.  But because again,

19   on the face of it, on the face of it, you know, whatever.

20             You can bring an Adversary Proceeding for a

21   declaratory relief.  And join it with the right, sell under

22   363, 363(f), right?

23             MR. CARLEBACH:    H, 363(h), I believe.

24             THE COURT:    Well.

25             MR. WEINER:    Ultimately you want to sell under

1  363.

2          THE COURT:    You could put it all in the adversary.

3          MR. WEINER:    Well, I have a -- we have a motion to

4  sell under 363(f).  I don't know that I need to go further

5  than that.

6          THE COURT:    Well, only again -- just that.  I

7  could take that motion that's now a contested matter, and

8  create a contested matter scheduling order and have a

9  contested matter scheduling order both together with the

10 Tamar Fetman Adversary Proceeding.  That's a little more

11 awkward then --

12         MR. WEINER:    Well, I could, you know, I could

13 assert my 363(h) and partition actions in the counterclaim

14 in that Adversary Proceeding.

15         I'm just looking to, you know, not create multiple

16 proceedings and line up a ladder of expense --

17         THE COURT:    Well, I guess you could --

18         MR. WEINER:    -- a ladder of expenses.

19         THE COURT:    -- well, if you could -- do you want

20 to counterclaim and bring in the other parties on

21 crossclaims, counterclaims.

22         MR. WEINER:    Well, what would the claim against

23 the parents be just to declare that the property belongs to

24 the Debtor?  I mean --

25         THE COURT:    Yeah, I mean, or they have to bring

1    the AP.  I mean somebody has to tee it up so we're all in

2    one proceeding.  And we make it nice and simple.

3          MR. WEINER:   Well, if they want to bring a

4    proceeding to impose a constructive trust I suppose.  But

5    why don't --

6          THE COURT:   Again that would have to be done by

7    Adversary Proceeding -- you would have to bring an

8    Adversary Proceeding to impose a constructive trust.

9          MR. WEINER:   But then we have to make motions.

10   But I think the idea of having them brief the issue now

11   might make her through all of that.

12         THE COURT:   Well, that's fine.

13         MR. WEINER:    So the --

14         THE COURT:  I want to brief the issue now.

15         MR. WEINER:   Right.

16         THE COURT:   Why don't, okay, that would -- you

17   could -- you could childcare in that adversary.

18         MR. WEINER:   Right.

19         THE COURT:  So we don't have three adversaries.

20         MR. WEINER:   Right.

21         THE COURT:   And you could commence an Adversary

22   Proceeding for constructive trust.  I mean, this is -- this

23   wasn't a form of an Adversary Proceeding.  Typically it's

24   in the form of an adversary.  But we haven't the trustee

25   board Adversary Proceeding seeking a turnover.  So those

1   are different cases.

2           I just want you to figure out procedurally how

3   we're going to do this.  And then we're going to do it that

4   way.

5           MR. LEFKOWITZ:   Your Honor, first of all, this is

6   precisely the -- an unjust enrichment claim against Jacob

7   Fetman, or the creditors.

8           THE COURT:   Not against the creditors.  It has to

9   be against Jacob Fetman.

10          MR. LEFKOWITZ:   Second, I did, I mean --

11          THE COURT:   How is this an unjust enrichment claim

12  against Jacob Fetman?

13          MR. LEFKOWITZ:   If the -- if Moshe Fetman and

14  Yaffa Fetman lose their property, and the property goes to

15  someone else, whoever that someone else is is going to be

16  unjustly enriched.

17          THE COURT:   No, no, no.  That's not -- to impose a

18  constructive trust, Mr. Lefkowitz, please.  Please, don't

19  do the clients a disservice.

20          To impose a constructive trust you have to impose

21  it on the party who has the legal title.  And it is they

22  who have to be guilty of the flawed, or the unjust

23  enrichment.  Not a creditor of theirs.

24          MR. LEFKOWITZ:   I understand what you're saying.

25  I'm just saying from my perspective --

1          THE COURT:    What I'm saying is the law.

2          MR. LEFKOWITZ:    Okay.

3          THE COURT:    So you need to understand what I'm

4    saying.

5          MR. LEFKOWITZ:    I said somebody is going to be

6    unjustly enriched.  If my clients lose their property --

7          THE COURT:    But that's not the issue.  The issue

8    is --

9          MR. LEFKOWITZ:    Okay.

10          THE COURT:    -- the issue is in constructive trust

11    there's four elements.  And again, when you read these

12    decisions, again, I don't know how you come out from behind

13    them, unless you want me to make new law in the 2nd

14    Circuit.

15          MR. LEFKOWITZ:    Well --

16          THE COURT:    Which you know I could do.

17          MR. LEFKOWITZ:    Your Honor, the -- as I said

18    before, since it's a contested issue we are entitled to

19    discovery.  And I'm not really sure how I could file --

20          THE COURT:    What is your discovery you would be --

21    what -- from who?  What are you discovering?

22          MR. LEFKOWITZ:    Okay, we have --

23          THE COURT:    Presumably your client is the one who

24    is in possession of all the information.  What is there to

25    discover?

1          MR. LEFKOWITZ:    Your Honor, I can't -- before I

2     even get to that, I can't really do anything.  I don't see

3     how I could file an Adversary Proceeding if my client has

4     filed for exactly the same relief in state court.

5          THE COURT:    I don't know if it's exactly the same.

6     You're wrong about that.  Because the specific question

7     here is once there was a bankruptcy petition filed by your

8     client by coincidence an estate is created.  It's all of

9     the property of the estate.  By filing that you said to

10    them go sell everything.  Okay?  And now you're saying

11    what's -- no, one of those things is mine, constructive

12    trust.  You need to bring an Adversary Proceeding for

13    declaratory relief.

14          Somebody needs to do it.  I mean, again, I mean

15    presumably your -- if she's saying she owns it, and you're

16    saying you own it you're on opposite sides too.  We all

17    need to be in the same -- we all need to be sort of in the

18    same proceeding here.  Or to that -- consolidate it.

19          Your adversary is to set aside the lien, which is a

20    different issue.

21          MR. WEINER:    Yeah, that was -- exactly.  That was

22    just so that I could satisfy that element of 363(f) which

23    requires that the lien [Inaudible, Crosstalk].

24          THE COURT:  Well, this was just for bidding

25    procedures.  Did this motion include, include (f) and (h)

of 363?

MR. WEINER:   Yes.

THE COURT:   It did?

MR. WEINER:   Yes, it did.  The last element is
authorizing the sale free and clear of liens.  So, yes it
did.

THE COURT:   Right.  And then what about -- but
that was before the -- let me look at it.  It helps for me
to be in the right case.

Oh, wait a minute.  Okay, this is good.  You didn't
just sue the Trustee.  You sued the Fetmans.

MR. WEINER:   Yes.

THE COURT:   Oh.  Yes, and I asked for declaration
regarding all the parties' interests in the property.

THE COURT:   Oh, then you've already done that.

MR. WEINER:   Yes.

THE COURT:   So we've got it.  That's only as to
one of the two properties.  But --

THE COURT:   Oh.

MR. WEINER:   Because, Tamar Fetman's name has
never been on the other property.  That one has been in
Jacob's name since --

THE COURT:   Okay, let me do this.  Let me join,
all right.  And your motion, you said your motion -- I
thought before you said something about that assuming you

1    go that, then you would have to --

2         MR. WEINER:    If she was able to show that she was

3    a CO-owner, then we would have to, you know, bring an

4    action on 363(h), and [inaudible].

5         THE COURT:    All right.    So what I'm going to do is

6    him going to treat your motion as a contested matter.    Same

7    rules apply.    Or all the rules will apply as it if were an

8    adversary proceeding.

9         Okay, so you're going to respond if you haven't

10   already to that contested matter.    You've all responded to

11   it, correct, that motion?

12        MR. WEINER:    Yes.

13        THE COURT:    So you're answers are in.    And I will

14   -- when are we back here?

15        MR. WEINER:    Well, we have the pre-trial

16   conference in the Adversary Proceeding.

17        THE COURT:    That's a different end.    It was just

18   filed an hour ago.

19        MR. WEINER:    It was just filed.    I don't believe

20   the summons has been issued yet Judge.

21        THE COURT:    Okay.    All right.    And you're okay for

22   next week?    Oh, it's this week.

23        MR. WEINER:    We have the issue that there was some

24   answer filed three weeks late without seeking permission to

25   file a late answer.

1          THE COURT:    Yeah, well I'll probably allow it, so.

2          MR. WEINER:    I'm not quite sure what the rules are

3     for if that can --

4          THE COURT:    Because I haven't noted the default

5     yet either, right?

6          MR. WEINER:    I was going to ask you to do that on

7     Thursday.

8          THE COURT:    Well, but I probably wouldn't, you

9     know.  I don't note defaults when people walk in and say

10    Judge give me a few days to file an answer.

11         MR. WEINER:    All right, if --

12         THE COURT:    They've already filed an answer.

13         MR. WEINER:    That's how Mr. Lefkowitz  called me.

14    I would have given him time to answer.

15         THE COURT:    All right.  All right.

16         MR. WEINER:    But he didn't.  Instead he just

17    served an answer three weeks late without even --

18         THE COURT:    All right, Mr. Lefkowitz, you need to

19    follow --

20         MR. WEINER:    -- making an attempt to contact me.

21         THE COURT:    -- the rules.  Okay.  There's an

22    answer.  What I'm trying to figure out is what are we going

23    to do on the -- if it's a different case, and I'm just

24    trying to figure out when we're going to do this.

25         Okay, so I'm going to do a contested matter

1    scheduling order on your motion, okay.  Again, I'm not sure

2    the issues of fact that are raised are together with his

3    adversary.

4             MR. WEINER:    Yes, that's true.  There are

5    certainly issues that --

6             THE COURT:    And he's named everybody.  So everyone

7    is going to have to file an answer on his adversary and

8    counterclaims.  So it may be that I could just not do this,

9    and carry this, right.  If you've named everybody --

10            MR. WEINER:    Well, I still think --

11            THE COURT:    -- you can crossclaim, and

12   counterclaim.

13            MR. WEINER:    I still think we need this because

14   that brings in the constructive trust issues and.

15            THE COURT:    Well, no.  I'm assuming that -- okay.

16            MR. WEINER:    I don't think he's getting -- and

17   plus this concerns both properties.  And I don't think

18   there is [inaudible].

19            THE COURT:    All right, so I'm going to do a

20   contested matter scheduling order on your motion.  Okay.

21   So I'll have the parties order to confer under Rule 26 by

22   February 17.

23            Each party is ordered to file a brief statement

24   summarizing its position regarding the matter, and include

25   the following -- this doesn't -- this is the one where we

1    removed the discovery.  This is a more recent one.

2            COURT CLERK:    Okay.

3            THE COURT:    We're pretty much printed one that's

4    [inaudible] two forms.

5            COURT CLERK:  Okay.  [Inaudible].  Okay, 2/17 to

6    confer.  If you're going to have discovery.

7            I don't think pretty much discovery is needed here

8    at all.  I can't figure out what it would be.  I mean,

9    there's no discovery they can have from you.

10           MR. WEINER:    Right.  It's typical in a case.  The

11   Trustee doesn't have any direct knowledge, but just gets

12   his or her knowledge from documents that other people have.

13           THE COURT:    So let's conclude discovery by April

14   18 so we're free before Passover.  April 18, if there's any

15   discovery by May -- by May 18, each party is required to

16   file a brief statement summarizing its position.  And we

17   will hear -- and I'm also going to put in this one for

18   dispositive motions, even though it's a contested matter

19   because I'm going to treat it like an adversary.

20           You can -- if you -- if I consolidate the contested

21   matter -- the contested matter with the adversary, which I

22   think I can do.  Or at least treat them together you can

23   make the summary judgment in either place, all right.  But

24   the point is that -- or you can make the summary judgment

25   motion.

1          Dispositive motions are going to have -- I'll have

2     a deadline here for them.  So the deadline for dispositive

3     motions -- let's see discovery is -- May 13 for dispositive

4     motions.

5          Court will commence hearing -- let's pick a date

6     for the trial and the hearing.

7          When is the [inaudible] conference, the end of May?

8          COURT CLERK:  Yes.

9          THE COURT:  I want to make sure there is no

10    holidays.

11         COURT CLERK:  Right.

12         THE COURT:  Jewish holidays.

13         COURT CLERK:  Right.  Right.

14         THE COURT:  There aren't any?

15         MR. WEINER:  I don't believe there are any during

16    May.

17         THE COURT:  No, June.  I'm looking at June.

18         MR. WEINER:  There is a holiday in June.

19         MR. CITRON:  It's June 12 to 13.

20         THE COURT:  Okay.  June 7 is okay.  Okay, June 7

21    would be the trial, if there's a trial.

22          And the -- and the full hearing on the contested

23    matter, again which we'll do together.

24         But I want briefs.  I want briefs on the

25    constructive trust because I don't -- I think we're all

1    wasting our time unless you have an argument.  You know,

2    unless you can tell me this law is not the applicable law.

3         And that would be briefs on the issue of

4    constructive trust, I want them soon.

5         MR. WEINER:   It's their burden.  Is it appropriate

6    to have them do a brief, and then we respond to it?

7         THE COURT:   Yeah, yeah.  You can do that.

8         Mr. Lefkowitz, how much time do you need for a

9    brief?

10         MR. LEFKOWITZ:   A month.

11         THE COURT:   I just gave you the the law.  It's not

12    that hard.

13         MR. LEFKOWITZ:   Now I have to find law that will

14    rebut that.

15         THE COURT:   That will be hard.

16         MR. LEFKOWITZ:   So therefore I need a month or

17    more.  It's going to be a long search.

18         THE COURT:   I'm not giving you a month, come on.

19         I'll give you until February 22.  So Moshe Fetman,

20    and it's both the husband and wife, or just the husband?

21         MR. LEFKOWITZ:   Both, Your Honor.

22         THE COURT:   And the wife's name is?

23         MR. LEFKOWITZ:   Yaffa, Y-a-f-f-a.

24         THE COURT:   Yaffa.  Moshe Fetman, and Yaffe's

25    brief on the issue of composing a constructive trust is due

1    by February 22.  And what do you want by way of response?

2              MR. WEINER:    Two weeks Judge.

3              THE COURT:    Okay.  Two weeks is --

4              MR. WEINER:    March 7.

5              THE COURT:    March 7.  Okay.  So that's Trustee's

6    response March 7.

7              MR. WEINER:    Can we have argument on that shortly

8    after that.  Maybe if that issue gets resolved it may

9    dispose of a lot of the other things in here.

10             THE COURT:    When you say when the issue gets

11   resolved, that's why I just said to you, you could make a

12   dispositive motion on it.

13             MR. WEINER:    Well, does he have -- if we do this

14   briefing, and then we have, you know, argument on the issue

15   of constructive trust.

16             THE COURT:    Well, I didn't say we were going to

17   argue on the issue.  Let me see the briefs first and then

18   we'll see where we are.

19             MR. WEINER:    But if that issue gets resolved in

20   either direction it may make a lot of everything except the

21   issue of Tamar Fetman's --

22             THE COURT:    Right.

23             MR. WEINER:    -- the owner of the property may make

24   everything else go away.

25             THE COURT:    Right.  But the Tamar Fetman issue --

1  right.

2          MR. WEINER:   I'm not, you know --

3          THE COURT:   Well, we're going to have -- we're

4  going to adjourn the -- I'm going to adjourn your motion,

5  which is now a contested matter to after the briefs are in.

6          MR. WEINER:   Okay.

7          THE COURT:   And then, you know, I'm going to --

8  just like I would adjourn a pretrial.

9          And again you can file something that's like a

10  summary judgment motion that says Judge there's no issues

11  of fact.  And on the issue on constructive law we win.  And

12  so therefore, you know, grant my motion to the extent that

13  -- it could be partial -- but to the extent that these

14  folks are not owners of the property.  Okay?

15          MR. WEINER:   I understand.  So we're going to come

16  back --

17          THE COURT:   I'm going to have you come back after

18  the briefs.

19          MR. WEINER:   Okay.

20          THE COURT:   And I'm going to assume, I'm going to

21  try to track that with the pretrial, if I can do this

22  right.  With that pretrial.

23          MR. WEINER:   Yes, I understand.

24          THE COURT:   So I said your brief was due March 7.

25  So we can come back the end of March.  What have we got the

1    end of March?

2              COURT CLERK:   You can [inaudible].

3              THE COURT:   Oh, wait a minute.

4              MR. LEFKOWITZ:   Your Honor, we have something --

5              THE COURT:   Wait a minute.  I'm first doing this.

6    March 29.  Everybody got March 29 for coming -- that will

7    be the date we picked for the pretrial, because if you got

8    the summons today you've got thirty days to answer.  And

9    we'll have the pretrial after that.

10             So the pretrial on the Tammy Fetman, and the

11   adjourn date for the  contested matter is March 29 okay?

12             MR. LEFKOWITZ:   No, Your Honor, I have a trial in

13   Manhattan on the 29.

14             THE COURT:   Okay, I'll give you a different date.

15   How long is it going to last?

16             MR. LEFKOWITZ:   I couldn't say, Your Honor.

17             THE COURT:   Okay, we'll give you a due date --

18   we'll go before.  Whatever you have the week before.

19             When is Purim?

20             MR. LEFKOWITZ:   The 24.

21             COURT CLERK:   The 22 Judge?

22             THE COURT:   Yeah, we could do the 22.

23             COURT CLERK:   At 2:30?

24             THE COURT:   Okay.  March 22 at 2:30.  Right,

25   that's not a fast day?  The fast day would be the 23?

1      MR. LEFKOWITZ:   Correct.

2      THE COURT:   Okay, March 22 at 2:30.

3      MR. LEFKOWITZ:   Now, what about the other pretrial

4  or are we talking about the same one?

5      THE COURT:   That pretrial and the adjourned

6  contested matter on his motion are then.  We have another

7  pretrial this Thursday.

8      MR. LEFKOWITZ:   Could we like put it on the same

9  day as --

10     THE COURT:   No, it's a different issue.

11     MR. WEINER:   And then you had talked about having

12 the trial or hearing on dispositive motions on June 7.  I

13 don't think we had a time for that.

14     COURT CLERK:   10:30.

15     THE COURT:   10:30.  I'm going to upload a

16 contested matter scheduling order.

17     MR. WEINER:   Then I'll have all these dates and

18 times.

19     MR. CITRON:   If I may, Your Honor, I'm not -- I

20 assume my appearance is not required on the 4, which is two

21 days from now?

22     MR. WEINER:   His client is not a party to the --

23     THE COURT:   No.

24     MR. CITRON:   Okay.  The other thing is I heard --

25 just for the sake of the record -- I heard Your Honor

1  mention that my client can seize the constructive trust

2  area.  I mean, I think it's -- I've stated this before, but

3  it's now my client's position that she can seize the

4  constructive trust --

5         THE COURT:   I didn't say -- I don't know that she

6  can seize the constructive trust period.  I thought she was

7  in agreement with the Debtor as to what the Debtor's story

8  is with respect to the property.  And the Debtor's story is

9  that they are merely -- they merely have legal title.

10         MR. CITRON:   Her testimony would be somewhat

11  consistent with that.  She's not qualified to testify.

12  There's no conclusions that she was aware that there was an

13  agreement, discussions of agreement between her husband and

14  the parents.

15         THE COURT:   Yes.

16         MR. CITRON:   But she can't -- she can't testify --

17         THE COURT:   Was that agreement ever reduced to a

18  writing?

19         MR. CITRON:   Not that I know of.  And I don't know

20  that she was a party to that agreement.

21         THE COURT:   Right.  I mean, the discovery is

22  probably going to come from their side more than it's going

23  to come from your side I think.  Okay.

24         Anybody else want to be heard?

25         Okay.  Thanks everybody.

1               MR. WEINER:   Thank you Your Honor.

2                         [End of Hearing]

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

C E R T I F I C A T I O N

2  I, Phyllis P. Corella certify that the foregoing is a true

3  and correct transcript of the reported proceedings held on

4  February 2, 2016 in the matter of Jacob Fetman, Case Number

5  15-43716, before Honorable Lord, and that the transcript page

6  format is in conformance with the regulations of the Judicial

7  Conference of the United States.

8

9                    Dated October 17, 2016

10

11

12      S/S   PHYLLIS P. CORELLA

13

14

15

16

17

18

19

20

21

22

23