**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
*In re*:                                              :        Chapter 7
                                                      :
JACOB FETMAN,                                         :        Case No. 15-43716-NHL
                                                      :
                                                      :
             Debtor.                                  :
----------------------------------------------------------------x

**OPPOSITION OF AISH HATORAH NEW YORK, INC. TO DEBTOR'S APPLICATION FOR RELIEF FROM AUTOMATIC STAY**

Aish Hatorah New York, Inc. ("Aish"), by its attorneys, Backenroth Frankel & Krinsky LLP, submits this opposition to the application (the "Application") of the Debtor for relief from the automatic stay so that it can file a motion with the Supreme Court, Kings County, to renew its motion to vacate the Supreme Court's judgment confirming the arbitration award against the debtor based on a decision issued by the Appellate Division Second Department regarding the propriety of arbitrations occurring on Sunday, and states as follows:

1.    The Debtor is attempting to cause Aish to engage in duplicative litigation so that Aish is forced to expend more of its charity funds in responding to the Debtor's improper motion practice. This latest motion is nothing more than a repeat of a prior meritless motion that the Debtor made to the New York Supreme Court (the "State Court") which is currently on appeal to the Second Department. The parties already agreed to lift the automatic stay so as to obtain a decision on the appeals of the Supreme Court's decision confirming the award. The Debtor addressed the Sunday issue in the brief that it filed with the Appellate Division. The Debtor briefed the Sunday issue already with the Supreme Court in an earlier motion to renew and reargue and vacate the confirmation decision (along with other multiple repetitious motions). Indeed, the Supreme Court indicated it would sanction the Debtor if it made additional motions repeating the

1

same arguments. The Supreme Court's decisions are being appealed by the Debtor. There is no reason why any other court, but the appellate court should be hearing argument on the Sunday issue which the Debtor is in the process of appealing.

2. Aside from already being the subject of an appeal, the motion that Debtor seeks to make for the second time is meritless. As the Debtor is well aware, the arbitration that was confirmed by the State Court did not occur on Sunday. As discussed below, the parties initially agreed to arbitrate a dispute with Rabbi Dovid Cohen regarding the Debtor improperly entering into a lease on behalf of Aish, which arbitration met on Sunday. The parties then realized that Aish had completely separate claims for embezzlement of millions of dollars. The parties then entered into a new arbitration agreement, not on Sunday, and all of the sessions relating to the second arbitration occurred on weekdays.

3. The Court should deny Debtor's motion lift to the automatic stay.

## **DEBTOR'S MOTION TO LIFT THE AUTOMATIC STAY SHOULD BE DENIED**

4. Section 362(d)(1) of the Bankruptcy Code provides that a court may modify the automatic stay for "cause." 11 U.S.C. § 362(d)(1). "Cause" is not defined in the Bankruptcy Code. In evaluating a motion to lift the automatic stay, courts evaluate the following 12 factors set forth by the Second Circuit in *In re Sonnax Indus*, 907 F.2d 1280 (2d Cir.1990):

    (i)    Whether relief would result in a partial or complete resolution of the issues;

    (ii)    Lack of any connection with or interference with the bankruptcy case;

    (iii)    Whether the other proceeding involves the debtor as a fiduciary;

    (iv)    Whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

    (v)    Whether the debtor's insurer has assumed full responsibility for defending it;

     (vi)     Whether the action primarily involves third parties;

     (vii)    Whether litigation in another forum would prejudice the interests of other creditors;

     (viii)   Whether the judgment claim arising from the other action is subject to equitable subordination;

     (ix)     Whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

     (x)      The interests of judicial economy and the expeditious and economical resolution of litigation;

     (xi)     Whether the parties are ready for trial in the other proceeding; and

     (xii)    The impact of the stay on the parties and the balance of the harms.

*Id.* at 1286 (*citing In re Curtis*, 40 B.R. 795, 799–800 (Bankr.D.Utah 1984)).

5.     The decision whether to lift the stay is entirely within the discretion of the Court, and the Court need only consider the relevant factors in making its determination. *See In re Sonnax Indus.*, 907 F.2d at 1286 (reaching its holding after considering only four factors it deemed relevant); *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir.1999) (remanding with instructions to apply the Sonnax factors test and noting that not all of the factors may be relevant).

6.     In deciding whether to lift a stay and allow a creditor to continue litigation in another forum, a bankruptcy court should consider the "particular circumstances of the case, and ascertain what is just to the claimants, the debtor and the estate." *In re Touloumis,* 170 B.R. 825, 828 (Bankr.S.D.N.Y.1994).

7.     Applying the factors that appear most relevant to the analysis, the Court should deny the Debtor's application to lift the automatic stay for the purpose of filing another motion in the State Court.

**Lifting the Stay Will Not Result in a Complete Resolution (Factor One)**

8.First, the application will not resolve whether the judgment against the Debtor is valid (factor one).  The Debtor has made multiple arguments (including the Sunday issue) to the appellate division and those appeals will resolve all of the issues raised by the Debtor once and for all.  By contrast, allowing another motion on a single argument that has already been made to the State Court will not.

**The Appellate Division is the Appropriate Tribunal (Factor Four)**

9.The fourth factor also favors maintaining the stay.  The State Court made multiple decisions that resulted in the judgment against the Debtor.  The Appellate Division is the Court that can resolve all of those issues, including the Sunday issue, an argument that was already made by the Debtor below and which the Appellate Division will review.

**Judicial Economy Favors Maintaining the Stay (Factors Ten Through Twelve)**

10.This Court previously rejected the Debtor's application to allow for the appeals of side decisions made by the State Court that would result in the wasting of Debtor's assets.  Debtor's proposed repeat motion is unnecessary because the Debtor already raised the issue below and the matter has been briefed by the Debtor on appeal.  There is no reason to allow Debtor to make a new motion when all of the issues raised by Debtor will be resolved by the Appellate Division.

11.Moreover, the Sunday issue is a red herring.  The arbitration did not take place on Sunday.  An initial meeting took place with the arbitrator on a Sunday for a completely separate dispute.  An arbitration agreement was entered at that time on Sunday, October 13, 2013, concerning a claim that Debtor had entered into an unauthorized lease on behalf of Aish.  (*See* Exhibit A).  The parties realized that Aish had separate claims against Debtor relating to the embezzlement of Aish's funds.  Accordingly, on Tuesday, October 22, 2013, the parties signed a

second arbitration agreement and met for the first time at which time Fetman admitted that he had stolen funds from Aish. (*See* Exhibit B). On Wednesday, October 30, 2013, the parties met for "**a second session of the Rabbinic Court**" and additional testimony was given. (*See* Exhibit C, line 3). The third and final session occurred on Monday, December 9, 2013. The award was issued on Tuesday, December 17, 2013 and a clarification of the award was issued on Thursday, December 19, 2013.

12. Debtor concedes that he already made his meritless Sunday argument to the State Court and the issue is now on appeal.

13. For the reasons stated above, the Application should be denied.

BACKENROTH FRANKEL & KRINSKY, LLP

By: /s/Mark A. Frankel
800 Third Avenue
New York, NY 10022
Tel: 212.593.1100
E-Mail: mfrankel@bfklaw.com

*Attorneys for Aish HaTorah New York, Inc.*

# Exhibit A

Yaakov Fetman and Rabbi Yitzchok Grunman have come to me to adjudicate a dispute. They have agreed to accept my decision. Oct 13, 2013

Rav David Cohen

Yitchk [signature]                    10/13/2013

[signature]                             10/13/2013

# Exhibit B

Yaakov Fetman and Rav Yitzchok Greenman, representing Aish Hatorah NY Inc., have come to me to adjudicate a dispute. They have agreed to accept my decision. At present a preliminary decision is to be put into place until a thorough investigation of many bank accounts controlled by the Fetman family are researched.    Rav Dovid Cohen Oct 27/13

בס"ד

Jacob Fetman

Oct 22, 2013

Yitz Greenman

# Exhibit C

FILED: KINGS COUNTY CLERK 04/25/2014
NYSCEF DOC. NO. 10
RECEIVED NYSCEF: 04/25/2014

Case 1-15-43716-ess Doc 160 Filed 02/07/17 Entered 02/07/17 18:24:36
NYSCEF DOC. NO. 177
PAGE 01/02
2/3

Nov-01-2013 12:52 PM Ober Kaler 4105470699    7183767388

In connection with the ongoing proceeding as between Rabbi Yitz Greenman on behalf of Aish HaTorah New York, Inc. ("Aish") and Mr. Jacob Fetman, the following matters were decided as a result of the second session of this Rabbinic Court on Wednesday, October 30, 2013, the 26th day of Cheshvan 5774:

1. Mr. Fetman must provide unrestricted access to the various e-mail accounts that he maintained and/or maintains during his 18 year tenure of employment with Aish, which includes, but not limited to:
jfetman@aish.com; jfetman@aish.edu; jfetman@aishconnections.com; jfetman@discoveryproduction.com and jacobfetman@gmail.com.

2. Jacob Fetman is required to prove that all funds deposited into the accounts belong to him; all amounts that Mr. Fetman is unable to prove ownership of must be paid promptly by Mr. Fetman to Aish.

3. Jacob Fetman must promptly provide copies of all statements for credit cards used by him or on his behalf and that were issued to, or in, the name of Aish and, similar to decision 2, he must substantiate that all charges associated with such credit cards were not used for his own personal purposes and, to the extent he cannot prove that, then he must reimburse Aish for all such charges.

4. Jacob Fetman also must provide copies of statements for all personal credit cards that he used during his period of employment with Aish, starting immediately with such statements issued for the last 12 months, and, to the extent that Aish can establish that some portion of those charges was paid for with funds belonging to Aish, then there will be a presumption that Aish funds were used to pay all such personal charges; in that event, Mr. Fetman will bear the burden of proving that all other charges were paid for with personal funds, and his failure to do so will obligate him to reimburse Aish for all such credit card charges.

5. Jacob Fetman will promptly arrange to have his name removed from any and all Aish and Aish affiliate bank and other financial accounts, including those applicable to Tomchei Torah and any such affiliates.

6. Jacob Fetman will promptly arrange to have any and all documents relating to the investment that Merkaz The Center has made of at least $1.5 million in the Platinum Fund and $250,000 in Bayberry fund and E Trade account delivered to Victor Lipnitsky and Stuart Schabes, Esquire. Furthermore, Mr. Fetman will arrange that Platinum, Bayberry, and ETrade funds (approximately $2 million) will be liquidated and deposited in an escrow account controlled by an independent third party established by this Rabbinic Court so that any such funds can be available for repayment as the amounts misappropriated are determined.

7. Jacob Fetman is also directed, again, that there cannot be use of any funds in any account owned or controlled directly or indirectly by him or his wife personally or any business that he or she owns or controls, including Merkaz The Center, S&A Management, Y&T Management or any other entity that has yet to be determined; provided, however, that the records of the account maintained at Merkaz The Center for the daycare will be promptly reviewed by Victor Lipnitsky and/or his colleagues at Invotex Group, and once ownership as required in Paragraph 2 above is established, then such funds can be immediately used by Jacob Fetman and his wife for their own personal needs during the period of time that the proceeding is open. The Fetmans must provide weekly reports concerning all deposits and withdrawals on the aforementioned account. The Fetmans may request that funds be released to meet

certain disclosed expenditures and it will be up to this Rabbinic court to render a decision as to whether any of the their funds can be used.

8. Any damages to Aish incurred by virtue of the lease extension that was signed by Jacob Fetman in 2012 must be paid in its entirety by Jacob Fetman and I will determine such amounts.

9. No asset including any, (i) stock, (ii) investment(s) including interests in any limited liability company, partnership, corporation, including such interests in Merkaz The Center, S&A Management, Y&T Management or in any real property, can be transferred, sold or otherwise disposed of by the Fetmans without my prior written consent. Furthermore, this Rabbinic Court along with Rabbi Yitz Greenman, Victor Lipnitsky and Stuart Schabes, Esquire are all to be immediately notified to the extent there are any pending offers, negotiations with respect to the sale of any such asset owned directly or indirectly by the Fetmans and to the extent any such sale occurs any and all assets and funds received must be escrowed and placed into an account under the exclusive authority of a designee of this Rabbinic Court.

_[signature]_ Nov 1, 13
Rabbi Dovid Cohen

_[Hebrew handwritten text]_ 3/3