UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

In re                                                                    Chapter 11

    Jacob Fetman,                                          Case No. 15-43716-nhl

               Debtor.

-------------------------------------------------------x

## SETTLEMENT AGREEMENT AND ORDER

        This Settlement Agreement memorializes the agreement made by and among Aish

Hatorah New York, Inc. ("**Aish**"), Jacob Fetman (the "**Debtor**," and together with Aish, the

"**Parties**"), and Robert Musso, as Chapter 7 Trustee (the "**Trustee**") on the record of the hearing

held on November 17, 2017. and

        **WHEREAS**, on November 23, 2015, the Bankruptcy Court entered an order of

relief under Chapter 7 of the Bankruptcy Code; and

        **WHEREAS**, Aish holds an approximate $20,000,000 New York State Court

judgment ("**Judgment**") against the Debtor; and

        **WHEREAS** other parties in interest include Tamar Fetman, Merkaz, the Center,

Inc. ("**Merkaz**"), Y&T Realty Management Corp., S&A Realty Management Corp., Moshe

Fetman and Yaffa Fetman (the "**Other Fetman Parties**"); and

        **WHEREAS**, the Parties agreed to a settlement regarding satisfaction of the

Judgment, which agreement was recited on the record of the hearing held in this case on

November 17, 2017 and approved by the Bankruptcy Court, and such settlement is fully

enforceable by the Parties.

**NOW, THEREFORE**, in consideration of the foregoing recitals, which are incorporated into the Parties' settlement agreement as set forth in this Settlement Agreement, and other good and valuable consideration, the sufficiency of which hereby is acknowledged, the Parties hereby memorialize their settlement agreement in writing.

1.        In full and complete satisfaction and discharge of the Judgment (a) the Debtor shall pay Aish $2,500,000, plus any additional amounts due under paragraph 3 herein (the "**Payoff Amount**") on or before April 23, 2018 (the "**Payoff Deadline**") by wire transfer, certified funds or Trustee check, TIME OF THE ESSENCE, (b) Merkaz shall transfer and assign to Aish all right, title interest in the Platinum and Bayberry funds ("Funds") referred to in paragraph 6 of the interim ruling of Rabbi Dovid Cohen dated November 1, 2013 ("**Platinum Assignment**") on or before one week following Bankruptcy Court Approval of the Settlement Agreement, and under the _____, 2013 agreement between the Debtor and Merkaz, the Debtor's bankruptcy estate shall be entitled to recognize any loss attributable to such Funds for tax purposes, (c) commencing upon execution of this Settlement Agreement, the Debtor provide Aish with the Debtor's full cooperation in providing Aish with financial information and records concerning Aish during the Debtor's employment with Aish, including, without limitation, information regarding any financial misconduct by upper management at Aish, Project Inspire, and Aish International ("**Aish Financial Information**") (collectively, 1(a), (b) and (c) shall be referred to herein as "Debtor's Undertakings").   There are no credits for any payments or amounts already recovered or received by Aish to date, other than the Stipulation and Order entered November 26, 2017, in which Aish acknowledges receipt of $300,000 from the Trustee towards the Downpayment Amount and pursuant to the Stipulation and Order entered December 11, 2017, Aish acknowledges receipt of an additional $362,961.32 towards the Downpayment

Amount, for total amount received of $662,961.32 leaving a balance of $1,837,038.68 on the Payment Amount.

      2.      Upon Aish's receipt of the Payoff Amount, the Platinum Assignment in a form reasonably acceptable to Aish, and the Debtor's provision of the Aish Financial Information in a manner reasonably acceptable to Aish, the Parties and the Other Fetman Parties shall exchange mutual general releases by and among the Parties and the Other Fetman Parties of, among other things, any liability under the Judgment. The general release provided by the Debtor, the Other Fetman Parties and their agents, successors, assigns and any entity owned by the Debtor or the Other Fetman Parties shall include, but not be limited to, any claims, damages, losses, injuries, suits, debts, liabilities, demands, actions, rights and causes of action of whatever kind or nature, at law or in equity, known or unknown, asserted or unasserted, suspected or unsuspected, foreseen or unforeseen, anticipated or unanticipated, accrued or unaccrued, made, brought, or which could have been made or brought, by the Debtor or the Other Fetman Parties against Aish and its affiliates and its current or former managers, members, officers, employees, subsidiaries, affiliates, agents, representatives, successors and assigns (including, but not limited to, Peter Hochfelder, Mitch Kuflik, Dave Markowitz, Yitz Kenneth Greenman, Victor Lipnitzky, Invotex, all of the lawyers and law firms that have represented Aish) and Rabbi Dovid Cohen, including, but not limited to, any and all claims arising out of or relating to the dispute, arbitration and lawsuits between Aish, the Debtor, the Other Fetman Parties, and their affiliates, agents, representatives, successors and assigns including Jon and Miriam Lefkowitz, Jacob and Tammy Fetman, Y&T Realty Management Corp., and S&A Realty Management Corp.. The persons to be released shall include, but not be limited to, the Parties' respective affiliates, "insiders" and former "insiders" as such terms are defined in section 101(31) of the Bankruptcy

Code, advisors, consultants, accountants, and attorneys. Stipulations of discontinuance or dismissals with prejudice shall be executed by all parties with respect to all proceedings, actions, arbitrations and beit din proceedings and filed with their respective tribunals.

        3.      Should the Debtor, not pay the entire Payoff Amount on or before the Payment Deadline, with no requirement for further notice, the balance due on the Payoff Amount shall increase by $50,000 per month until paid in full. Should the Debtor not effectuate the Platinum Assignment on or before on or before one week following Bankruptcy Court Approval of the Settlement Agreement, and/or (b) provide the Aish Financial Information on or before the Payment Deadline, Aish's counsel may send a written notice to cure to the Debtor by email at rblmnf@aol.com and iraabel@verizon.net. If the Debtor fails to cure the default within five days of such electronic transmission of the notice, Aish's counsel may file an affidavit of non-compliance with the Court and, provided the Bankruptcy Court has not entered an order, on motion of the Debtors, finding that the default does not exist, all amounts paid as of such default shall be deemed irrevocably released to Aish and shall not be subject to disgorgement for any reason, and, the balance due on the Payoff Amount shall increase by $50,000 per month until such default is cured.

        4.      The balance of the Payment Amount must be first transferred to the Trustee such that the Trustee can transfer the funds on or before the Payment Deadline. To pay the Payment Amount, the Debtor may use funds (a) subject to the Trustee's control including the funds received on account of the Trustee's sale of the real property at 4301 and 4305 Tenth Avenue, Brooklyn, New York ("**Real Property Sale Proceeds**") except that the Trustee will retain sufficient funds from the sales of the Real Property Sale Proceeds to pay the auctioneer, all closing expenses, all administrative expenses of the Debtor's estate, including Trustee

commissions and legal fees, and a reserve to pay any capital gains taxes due from sales. The Trustee shall transfer $200,000 of the Real Property Sale Proceeds to Aish upon execution of this agreement, and an additional amount of the Real Property Sale Proceeds to Aish upon Bankruptcy Court approval which amount shall be estimated by the Trustee. The Trustee's estimation shall be based on the Trustee's estimation of Real Property Sale Proceeds on hand at that time, less sufficient funds to pay the auctioneer, all closing expenses, all administrative expenses of the Debtor's estate, including Trustee commissions and legal fees, and a reserve to pay any capital gains taxes due from the sales. The availability of the Real Property Sale Proceeds and the Escrow Funds is not a condition to the Debtor's obligations under the Settlement, and shall not excuse the Debtor's default in payment under the Settlement Agreement.

5.     Moshe Fetman and Yaffa Fetman withdraw the claim that they filed in this case, claim #3 in the amount of $2,300,000.00 and waive any right to be paid from the bankruptcy estate.

6.     Tamar Fetman consents that of all of the net proceeds from the sale of the property at 4305 Tenth Avenue, after payment of the mortgage and closing expenses, shall go to the Trustee and be part of the Debtor's estate and she waives any right to the proceeds and any claim she may have against the Trustee or the Debtor's estate.

7.     If, the Trustee deems it necessary to raise additional funds to pay the obligations of the Debtor's estate, Moshe Fetman shall be deemed to have authorized the Trustee to sell the property at 4303 Tenth Avenue and the proceeds of the sales will be property of the Debtor's estate.

8.      The parties to the appeal of the Judgment in the New York Appellate Division, Second Department shall consent to Aish's motion to extend its time to file its opposition to the appeal.  In the event that there is a default under this Settlement Agreement and the terms of this agreement are not fully effectuated, the parties to the appeal shall consent to extend the time of the appeal so that Aish shall have at least one month after the time to cure such default has expired to file its opposition papers in the appeal.

9.      The Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective heirs, representatives, successors, and assigns, including a subsequent trustee under chapter 7 or 11 of the Bankruptcy Code.

10.     By executing this Statement, the Parties agree that this Statement is a true, correct, and complete statement of the terms of the settlement agreement recited on the record of the hearing held on November 17, 2017.  All parties who are signatories to this agreement consent to the terms of this Settlement Agreement and agree to be bound by and not challenge its terms.

11.     The Settlement Agreement shall be governed by the internal laws of the United States Bankruptcy Code and the state of New York without regard to any conflict of law provision that could require the application of the law of any other jurisdiction.

12.     The Settlement Agreement constitutes the entire agreement between the Parties hereto with respect to the transactions and matters contemplated herein.  It is understood and agreed that all other previous undertakings, negotiations, and agreements between the Parties hereto regarding the subject matter are superseded in their entirety by the terms herein.

13.    The Settlement Agreement cannot be amended, supplemented, or modified, nor may any provision of the Settlement Agreement be waived, except by a written instrument executed by the Parties, subject to Bankruptcy Court approval, if necessary.

14.    In the case that there is any discrepancy between the terms memorialized in this Settlement Agreement and those set forth in the transcript of the hearing held on November 17, 2017, the terms in this Settlement Agreement shall control.

15.    The Bankruptcy Court shall have and retain jurisdiction to enter final orders and judgments approving and enforcing the terms of settlement set forth herein, which shall include deciding any claims or disputes that may arise or result in connection with the Settlement Agreement, any breach or default thereunder, or the transactions contemplated thereby.

16.    While the Parties await Debtor's fulfillment of the Debtor Undertakings, all actions in the Bankruptcy Court in this bankruptcy case shall be stayed with the approval of the Court pending fulfillment by the Debtor of the Debtor's Undertakings, or the Debtor's default.

17.    This Settlement Agreement may be signed by facsimile or other electronic transmission and in counterpart originals with the same force and effect as if fully and simultaneously signed on a single original document. Copies of signed counterparts transmitted by facsimile or other electronic transmission shall be considered original, executed counterparts for the purposes of this paragraph.

Dated:        New York, New York
              March 27, 2018

                              **BACKENROTH FRANKEL & KRINSKY, LLP**
                              Attorneys for Aish


                              By:      s/Mark Frankel

                              800 Third Avenue
                              New York, New York 10022
                              (212) 593-1100

                              **RACHEL BLUMENFELD**
                              Attorneys for the Debtor


                              By:      s/Rachel Blumenfeld

                              26 Court Street
                              Brooklyn, New York 11242
                              (718) 858-9600

                              **ROSENBERG MUSSO & WEINER LLP**
                              Attorneys for the Trustee

                              By:      s/Bruce Weiner
                              26 Court Street
                              Brooklyn, New York 11242
                              (718) 855-6840

                              **GREGORY MESSER**
                              Attorneys for Moshe and Yaffa Fetman

                              By:      s/_____
                              26 Court Street
                              Brooklyn, New York 11242
                              (718) 858-1474

**ANDREW CITRON**
Attorney for Tamar Fetman


By:    s/
30 Wall Street
New York, New York 10005
(212) 804-5759

**LAW OFFICE OF IRA R. ABEL**
Attorney for Merkaz the Center, Inc.


By:    s/Ira Abel
305 Broadway, 14th Floor
New York, New York 10007
(212) 799-4672


s/Jacob Fetman
Jacob Fetman


_____
Tamar Fetman


_____
Moshe Fetman


_____
Yaffa Fetman

**MERKAZ, THE CENTER, INC.**

By: _____
       Tamar Fetman
Its: _____

**Y&T REALTY MANAGEMENT CORP.**

By: _____

**S&A REALTY MANAGEMENT CORP.**

By: _____

**AISH HATORAH, NEW YORK**

By: _____

**ANDREW CITRON**
Attorney for Tamar Fetman


By:    s/
30 Wall Street
New York, New York 10005
(212) 804-5759

**LAW OFFICE OF IRA R. ABEL**
Attorney for Merkaz the Center, Inc.


By:    s/Ira Abel
305 Broadway, 14th Floor
New York, New York 10007
(212) 799-4672


s/Jacob Fetman
Jacob Fetman




Tamar Fetman


Moshe Fetman


Yaffa Fetman

**MERKAZ, THE CENTER, INC.**

By:
        Tamar Fetman
Its:

**Y&T REALTY MANAGEMENT CORP.**

**ANDREW CITRON**
Attorney for Tamar Fetman

By:     s/ _____
30 Wall Street
New York, New York 10005
(212) 804-5759

**LAW OFFICE OF IRA R. ABEL**
Attorney for Merkaz the Center, Inc.

By:     s/Ira Abel _____
305 Broadway, 14th Floor
New York, New York 10007
(212) 799-4672

s/Jacob Fetman
Jacob Fetman
_____
Tamar Fetman

_____
Moshe Fetman

_____
Yaffa Fetman

**MERKAZ, THE CENTER, INC.**

By: _____
        Tamar Fetman
Its: Executive Director

**Y&T REALTY MANAGEMENT CORP.**

9



By: _____

**S&A REALTY MANAGEMENT CORP.**

By: _____

**AISH HATORAH, NEW YORK**

By: _____